OPINION AND JUDGMENT ENTRY
This is an appeal from a February 5, 1998 judgment of the Lucas County Court of Common Pleas in which the court sentenced appellant, Donald Collins, for violations of R.C. 2919.21(A)(2) and R.C. 2919.21(B)(G)(1), nonsupport of dependents. Appellant has presented three assignments of error that are:
 "A. APPELLANT WAS DENIED A FAIR TRIAL UNDER THE UNITED STATES CONSTITUTION BY THE PROSE CUTOR'S ACTS OF MISCONDUCT IN CLOSING ARGUMENT.
 "B. THE COURT COMMITTED PLAIN ERROR IN MIS STATING THE JURY INSTRUCTION AS TO COUNT ONE OF THE INDICTMENT.
 "C. THE CUMULATIVE EFFECT OF THE PREJUDICIAL ERRORS LISTED ABOVE DENIED APPELLANT OF A FAIR TRIAL."
The record shows that on September 19, 1990, the Lucas County Court of Common Pleas, Domestic Division, filed a judgment entry in which it granted a divorce to appellant's ex-wife. The court ruled that two children were born to appellant and his ex-wife during their marriage, and ordered appellant to pay child support "through the Lucas County Child Support Enforcement Agency, the sum of $253.00 per week, per child, plus poundage, for a total of $516.12, effective August 24, 1990."
On November 20, 1997, the grand jury sitting in Lucas County, Ohio, filed an indictment with two counts against appellant. In the first count, appellant was charged with a violation of R.C.2919.21(A)(2) on the allegation that from September 13, 1990 until June 30, 1996, appellant recklessly failed to provide adequate support to his children. In the second count, appellant was charged with a violation of R.C. 2919.21(B)(G)(1) for recklessly abandoning or failing to provide support as established by a court order to another person he was legally obligated to support.
Appellant entered not guilty pleas to both counts, and the case proceeded to trial. On January 15, 1998, a jury returned guilty verdicts for both counts. The trial court accepted the verdicts, found appellant guilty, and subsequently sentenced him.
In support of his first assignment of error, appellant argues that improper remarks made by the prosecutor in closing arguments deprived him of a fair trial. Specifically, appellant complains that the prosecutor continuously made remarks during closing statement in an effort to shift the burden of proof to appellant. In his brief, appellant cites the following list of remarks:
 "1. `The defense offered no testimony that Donald Collins paid directly to the mother.'(Tr.294)
 2. `No canceled checks or copies of money orders were ever presented showing payments to the mother.' (Tr.294)
 3. `In fact, the defense never asserted that they paid child support directly to the mother.' (Tr.294)
 4. `There's no evidence to the contrary, that he did not have income from which he could pay child support.' (Tr.297)
 5. `There was simply no evidence presented whatsoever that Donald Collins paid child support.' (Tr.297)
 6. `Again, no testimony was offered that Donald Collins had money withheld from his salary.' (Tr.298)
 7. `There were no pay stubs brought in that said here are the deductions for child support, the money was taken from me.' (Tr.298)
 8. `Surely if such things were in existence, we would have seen them.' (Tr.298)
 9. `There was no evidence offered that the defendant is totally or partially disabled, no medical records, no hospital records, no diagnosis from a doctor.' (Tr.300)
 10. `There was no evidence presented that the defendant is unemployed even or unemployable.' (Tr.300)
 11. `The State does not have to prove the ability — the defendant's ability to pay. The defendant has to prove that he was unable to pay.' (Tr.300)
 12. `In fact, we never even heard an assertion in this case that that did happen, that child support was withheld from Donald Collins' salary. No evidence whatsoever was presented to that effect.' (Tr.301)"
Appellant informed appellee and the court that he was not asserting an affirmative defense of inability to pay child support. Instead, he based his defense on the argument that he did all that was required of him to comply with the court-ordered child support when he signed a wage withholding order. He argued that the state had not met its burden to prove all the elements of the charges against him. He says that the remarks of the prosecutor were designed to convince the jury that he had a burden of proof, and that the remarks were improper and prejudi cial.
Appellee acknowledges that appellant "specifically asserted that he did not wish to raise the affirmative defense of inability to pay." However, appellee argues that from opening statements to closing statements, appellant's counsel kept arguing that appellant was not able to pay the ordered child support. Appellee says: "The mere desire to avoid the burden of an affirmative defense does not permit defense counsel to raise such a defense without assuming the burden of proof it carries."
The standard set by the Supreme Court of Ohio for reversing a conviction based upon prosecutorial misconduct is:
 "Ohio courts have suggested that the effect of counsel's misconduct `must be considered in the light of the whole case.' See, e.g., Mikula v. Balogh (1965), 9 Ohio App.2d 250, 258 [38 O.O.2d 311]. And where misconduct of counsel `* * * is of such a prejudicial character that the prejudice resulting therefrom cannot be eliminated or cured by prompt withdrawal, and admonition and instructions from the court of the jury to disregard it, a new trial should be granted, or the judgment reversed, notwithstanding cautions, admonition, and instructions by the trial judge.' Book v. Erskine Sons, Inc. (1951), 154 Ohio St. 391, 401 [43 O.O. 334].
 "In general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial. State v. Papp (1978), 64 Ohio App.2d 203, 211 [18 O.O.3d 157]; State v. Wade
(1978), 53 Ohio St.2d 182, 186 [7 O.O.3d 362]; State v. DeNicola (1955), 163 Ohio St. 140, 148 [56 O.O. 185]; Scott v. State
(1923), 107 Ohio St. 475;, 490-491. This, then, is the point at which we begin in our analysis of this issue.
"* * *
 "[W]e are constrained to keep in mind that `[i]f every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced of counsel are occasionally carried away by this temptation.' Dunlop v. United States (1897), 165 U.S. 487, 498.
 "Recently, in State v. Smith (1984), 14 Ohio St.3d 13, we considered another case involving prosecutorial misconduct. We found at 14 that the prosecutor's personal attacks and accusations against defense counsel went so far beyond `the normal latitude allowed in closing arguments' that a fair trial was made impossible. In Smith, the prosecution argued that its improper comments were harmless in view of the sufficiency of the evidence to sustain a conviction. It further contended that prejudice was eliminated because the jury was instructed that closing arguments were not evidence. In light of the circum stances of the case, we found these claims to be without merit, and held: `[T]he general instruction that arguments of counsel are not to be considered as evidence was insufficient to correct the error. * * * In view of the fact that improper insinuations and assertions of personal knowledge by the prosecution are apt to carry great weight against the accused when they should properly carry none * * * some more definite guidance from the court was required.' Id. at 15.
 "Important to our disposition of the instant issue is our observation in Smith that `it is not enough that there be sufficient other evidence to sustain a conviction in order to excuse the prosecution's improper remarks. Instead, it must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found the defendant guilty.' Id." State v. Maurer (1984), 15 Ohio St.3d 239, 266-267.
Keeping this standard in mind, we have carefully reviewed the record in this case and the elements appellee was required to prove to support convictions of appellant for non-support of a dependant.
In the first count of the indictment filed against appellant, the grand jury charged him with a violation of R.C.2919.21 that was in effect prior to July 1, 1996. The statute provided, in pertinent part:
 "(A) No person shall abandon, or fail to provide adequate support to:
"* * *
 "(2) His or her legitimate or illegitimate child who is under age eighteen, or mentally or physically handicapped child who is under age twenty-one;
 "(C) It is an affirmative defense to a charge under division (A) of this section of failure to provide adequate support that the accused was unable to provide adequate support, but did provide such support as was within his ability and means.
"* * *
 "(E) * * * If the offender previously has been convicted of or pleaded guilty to a violation of division (A)(2) of this section or there has been a court finding that the offender has failed to provide support under division (A)(2) of this section for a total accumulated period of twenty-six weeks out of one hundred four consecutive weeks, whether or not the twenty-six weeks were consecutive, then a violation of division (A)(2) of this section is a felony of the fourth degree." (Eff. Sept. 24, 1986).
Because the above quoted statute does not specify the degree of culpability the state must prove beyond a reasonable doubt, we must apply the provisions found in R.C.2901.21(B) in this case.
R.C. 2901.21(B) states:
 "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability not plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
The Supreme Court of Ohio has said:
 "Formerly, legislative silence as to mens rea in a statute defining an offense was interpreted as an indication of the purpose to impose strict liability. See, e.g., State v. Lisbon Sales Book Co. (1964), 176 Ohio St. 482, 27 Ohio Op.2d 443, 200 N.E.2d 590, para graph two of the syllabus. However, R.C. 2901.21(B) modified this rule so that `when the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.' Id. " State v. Schlosser
(1997), 79 Ohio St.3d 329, 331. (Emphasis sic.)
Therefore, when a statute does not have language that specifies a required mental culpability for a crime, courts must evaluate the language the legislature did include in the statute and the purpose of the statute to decipher whether the legislature intended to create a strict liability offense or one that is triggered only when a person acts recklessly.
The language the legislature included in the nonsupport statute in question requires proof that a parent failed to provide adequate support. A fact finder making a determination regarding whether or not support is adequate must look at a totality of circumstances. See State v. Jones (Jun. 19, 1995), Clermont App. No. CA94-11-094, unreported. The Supreme Court of Ohio evaluated similar language found in R.C. 2919.22(A) and concluded after applying the provisions in R.C. 2901.21(B) that the legislature intended to require a showing of recklessness before a parent could be convicted for child endangering. Statev. McGee (1997), 79 Ohio St.3d 193, 195-196. Accordingly,in this case, we find that the legislature did not specify a degree of culpability or plainly indicate a purpose to impose strict liability so the state had the burden to prove that appellant recklessly failed to provide adequate support to his minor children.
Recklessness is defined in R.C. 2901.22 as follows:
 "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circum stances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
When all the relevant statutes are considered together, it is clear that the state had the burden to prove that appellant: 1) recklessly 2)failed to provide his minor children with adequate support; 3) for a total accumulated period of twenty-six weeks out of one-hundred four consecutive weeks, whether or not the twenty-six weeks were consecutive.
The second count filed against appellant by the grand jury charged him with a violation of the current versions of R.C.2919.21(B) and (G)(1) which read:
 "(B) No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person is legally obligated to support.
"* * *
 "(G)(1) Except as otherwise provided in this division, whoever violates division (A) or (B) of this section is guilty of nonsupport of dependents, a misdemeanor of the first degree. If the offender previously has been convicted of or pleaded guilty to a violation of division (A)(2) or (B) of this section or if the offender has failed to provide support under division (A)(2) or (B) of this section for a total accumulated period of twenty-six weeks out of one hundred four consecutive weeks, whether or not the twenty-six weeks were consecutive, then a violation of division (A)(2) or (B) of this section is a felony of the fifth degree. * * *"
The language used by the legislature does not specify a mental element for culpability and does not clearly indicate an intent to make this a strict liability offense. Once again, the provisions of R.C. 2901.21 and of R.C. 2901.22 apply to add recklessness as an element of this offense. A person charged with criminal nonsupport under this section can still show that the state failed to prove that when the totality of circumstances are considered, the person acted recklessly with regard to the court ordered support obligation. Therefore, as to the second count filed against appellant, the state had the burden to prove beyond a reasonable doubt that appellant: 1) recklessly; 2) failed to provide support as established by a court order to, another person whom, by court order or decree, the person is legally obligated to support; 3) for a total accumulated period of twenty-six weeks out of one hundred four consecutive weeks, whether or not the twenty-six weeks were consecutive.
Evidence presented by the state showed that appellant was subject to a court order to pay child support for his two minor children effective August 24, 1990. The Child Support Enforcement Agency did not receive any payments towards appellant's court ordered child support obligation from 1991 through 1997. Appellant was employed as a basketball player for teams in Switzerland and France during those years, and may have earned at least $150,000 a year.
Appellant's ex-wife testified that she never received any money directly from appellant to help her support the two daughters born to them while they were married. She testified that she and the girls lived on welfare. She also testified that appellant did send large gifts of cash to the two girls for holiday and birthday presents, that he took them on "lavish trips" and that from July of 1992 to June of 1993, the girls lived with appellant in France. She said: "He might not send it to Child Support, but as far as my kids individually, I don't — I mean, he's always given them gifts, clothes, whatever."
A deputy clerk from the Lucas County Court of Common Pleas, Domestic Division and the records keeper from the Child Support Enforcement Agency admitted that appellant signed a valid order on March 20, 1990 for income benefits withholding that was sent to his employer. They also admitted that it was possible appellant's employer withheld the child support from appellant's wages and never sent the payments to the Child Support Enforcement Agency. They admitted that they had not contacted appellant's employer and that the employer could still be holding the funds in Europe. The records keeper from the Child Support Enforcement Agency testified that she had seen situations where employers did not send in collected money.
Appellant's eighteen year old daughter testified that her father had at least two surgeries on his back while he was living in Europe. She testified that when she visited or lived with appellant in Europe, he lived in a one-floor apartment with a small kitchen, a bedroom, a small bathroom and a little front room. She said he did not own a car. She said he gave her and her sister generous gifts of cash ranging from $700 a piece to $300 a piece for holidays and their birthdays. She said he also gave them money for school clothes and summer clothes.
Appellant's brother also testified. He said appellant had a short career as a professional basketball player in the NBA that ended in 1984. From 1984 to 1989, appellant played in a subleague of the NBA known as the CBA. He testified that the salaries paid to CBA players is considerably lower than the salaries paid to NBA players. In 1989 or 1990, appellant went to Europe to play basketball. Appellant had two back surgeries and began to play again after two years of recuperation. Appellant had to have a third back surgery because of tangled nerves caused by his first operation. Finally, appellant had an unscrupulous agent who took a great deal of money from many of his clients.
We agree with appellant that he did not have to assert the affirmative defense of inability to pay. We also agree with him that he could present a valid defense by arguing that the state failed to meet its burden to show that he recklessly failed to provide adequate child support for the specified period of time or that he recklessly failed to provide court ordered child support for a specified period of time. The evidence presented by appellant showed that he signed a valid income withholding order that was sent to his employer. Appellant showed he was aware of the court order for child support, and that he complied with all of the administrative requirements to meet his legal obligation. His evidence was designed to show that he did not recklessly disregard the court order to support his children. In addition, appellant presented evidence showing that he gave his daughters regular gifts of cash. All of the evidence presented by appellant could be considered by the jury to conclude that appellant did not act recklessly. By presenting that evidence, appellant was challenging the state on its burden of proof and we disagree with appellee's assertion that he was in reality raising an affirmative defense of inability to pay. Accordingly, we find that the remarks of the prosecutor were improper and were designed to shift the burden of proof to appellant. We further find that no curative instructions were given, even though appellant repeatedly objected to the remarks, and that it is not clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found the defendant guilty. Appellant's first assignment of error is well-taken.
Our disposition of the first assignment of error renders the remaining two assignments of error moot. The judgment of the Lucas County Court of Common Pleas is reversed. This case is remanded for further proceedings consistent with this decision. Appellee is ordered to pay the court costs of this appeal.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J., JUDGE
Melvin L. Resnick, J., JUDGE
Mark L. Pietrykowski, J., JUDGE
CONCUR.