DECISION AND JUDGMENT ENTRY
This matter is before the court on appeal from the Lucas County Court of Common Pleas wherein appellant, Jeremy Burke, was convicted of murder with a firearm specification. Appellant asserts the following assignments of error:
 "I. THE PROSECUTOR'S MISCONDUCT DURING CLOSING ARGUMENT, DENIED THE DEFENDANT-APPELLANT DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, AND ARTICLE 1, SECTION 10 OF THE UNITED STATES CONSTITUTION.
 II. THE COURT ERRED, TO THE PREJUDICE OF THE DEFENDANT-APPELLANT, WHEN IT ADMITTED PHOTOGRAPHS WHICH WERE UNNECESSARILY REPETITIVE AND GRUESOME.
 III. DEFENDANT-APPELLANT'S CONVICTION IS SUPPORTED BY INSUFFICIENT EVIDENCE AND IS THEREFORE A DENIAL OF DUE PROCESS.
 IV. DEFENDANT-APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 V. INSOFAR AS ANY ERROR COMPLAINED OF WAS NOT ADEQUATELY PRESERVED BELOW, DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL."
The facts giving rise to this appeal are as follows. On January 5, 1998, Chad VanHorn purchased cocaine from Tom Sharp at an East Toledo motel. Chad VanHorn told his friend, appellant, that Sharp had threatened to "shoot up" [VanHorn's] mother's home. In the early morning hours of January 6, 1998, VanHorn decided to go back to the motel to prevent Sharp from doing anything to his mother's home. He was accompanied by appellant. VanHorn brought a shotgun with him, which he covered with a white towel and carried behind his back into the motel.
Sharp's companion, Kelly Coppy, opened the door for the two men. When Sharp detected the shotgun, he demanded that VanHorn give it to him. VanHorn handed it to Coppy who gave it to Sharp. Sharp returned the weapon to VanHorn, ordering him to unload it. VanHorn claimed that while he was following Sharp's order, Sharp reached for something on a shelf near a door that connected that room to the adjoining room. According to Coppy, she heard Sharp say, "aw, you've gone and made her mad."
VanHorn later admitted to police that he shot Sharp once because he thought Sharp was reaching for a Tech-9 gun. Forensic evidence suggested that the first shot wounded Sharp in his right forearm as he was passing through the doorway to the adjoining room. VanHorn claimed appellant fired a second shot at appellant. That shot wounded Sharp in the side in the lower abdominal area, shattering the hip bone. Appellant denied shooting Sharp.
VanHorn and appellant then grabbed cocaine and the keys to Sharp's truck and fled the motel. Because of a security device, Sharp's truck would not start. Police found the keys on the front seat.
Coppy contacted 911 immediately. Paramedics attempted to revive Sharp and transported him to a hospital. On January 6, 1998, Sharp was pronounced dead from his shotgun wounds.
At approximately 5:45 a.m. on January 6, two men approached William Wilson who was retrieving his newspaper from the front yard of his home near the motel. They asked to use his telephone because of car problems. Wilson allowed them to use his cellular telephone to make a call. Wilson testified that the two men, whom he identified through a photographic array and at trial as VanHorn and appellant, thanked him and left. At approximately 6:00 a.m. on January 6, 1998, Timothy J. Dudderar, the owner of a heating and air conditioning company close to the motel, allowed two men in to use the telephone. The owner identified VanHorn and appellant as the two men.
VanHorn and appellant traveled to Indiana, where they obtained an acquaintance's car to drive to Florida. On January 9, 1998, Panama City, Florida police stopped the two after determining that the car they were driving had been reported stolen by the owner in Indiana. The two attempted to evade police by driving away at a high rate of speed and then fleeing on foot. The police ultimately located the two hiding under a house.
On February 6, appellant and Burke were jointly indicted for one count of aggravated robbery, in violation of R.C.2911.01(A)(1) and one count of murder, in violation of R.C.2903.02. On April 10, 1998, a jury found appellant guilty of murder. He was sentenced to eighteen years in prison.
In his first assignment of error, appellant contends that the prosecutor engaged in prosecutorial misconduct. Prosecutors are entitled to wide latitude during closing arguments. State v. Brown (1988), 38 Ohio St.3d 305. Generally, conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19; State v.Papp (1978), 64 Ohio App.2d 203. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. State v. Smith (1984), 14 Ohio St.3d 13. In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury would have found the appellant guilty. State v. Maurer (1984), 15 Ohio St.3d 239, 266, State v.Dixon (March 13, 1997), Cuyahoga App. No. 68338, unreported. The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982),455 U.S. 209, 219, 71 L.Ed.2d 78, 102 S.Ct. 940. An accused is guaranteed a fair trial, not a perfect one.
Generally, the state may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990), 51 Ohio St.3d 160, 165, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591,112 L.Ed.2d 596, quoting State v. Stephens (1970), 24 Ohio St.2d 76,82. However, prosecutors may not invade the realm of the jury by, for example, rendering their personal beliefs regarding guilt and credibility, or alluding to matters outside of the record. Statev. Smith, supra at 14.
Appellant first contends that the prosecutor engaged in misconduct when he presented evidence that was not supported by the record. Specifically, in his closing argument, the prosecutor surmised that the gun used in this crime had been intentionally altered in order to make it more maneuverable and easier to hide. Appellant did not object to the above remark.
The state argues that these remarks were relevant to the element of intent.
Appellant next contends that the prosecutor engaged in misconduct when he repeatedly expressed his own opinion regarding the state of the evidence in this case. Among the prosecutor's remarks in his closing argument, he stated he was going to present the jury with "my thinking on what this case is all about." More than once, the prosecutor began a sentence with the phrase "I think." At one point, the prosecutor stated "[I]f that's not aiding and abetting, assisting, encouraging, strengthening and all those other things that the law tells you you can't do, I don'tknow what is."
Most disturbing is the prosecutor's attempt to inflame the emotions of the jury when he stated: "[I]f you don't think that we proved our case beyond a reasonable doubt, let him go out the doors. But look over your shoulder if you do." Defense counsel objected to this remark.
Rare is the criminal conviction that is reversed on the basis of prosecutorial misconduct. The above remarks of the prosecutor, when viewed in isolation, do not rise to the level of reversible error. However, this court is required to review the prosecutor's closing argument as a whole. See State v. Moritz
(1980), 63 Ohio St.2d 150.
The prosecutor's comment regarding reasonable doubt was irrelevant and prejudicial. Ultimately, the prosecutor's comment diverted the jury's attention away from their most important concern, the evidence. This error was compounded by the prosecutor's earlier remarks in his closing argument pertaining to the gun and his own personal opinion. Viewing the closing argument as a whole, we conclude that the prosecutor's remarks in this case crossed the line that "separates permissible fervor from a denial of a fair trial." State v. Keenan (1993), 66 Ohio St.3d 402,409.
In reaching this conclusion we are mindful of the words of United States Supreme Court Justice George Sutherland in the 1935 case of Berger v. United States (1935), 295 U.S. 78, 88.
 "The [Prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."
Appellant's first assignment of error is found well-taken. Appellant's remaining assignments of error are hereby rendered moot. This judgment of the Lucas County Court of Common Pleas is hereby reversed and remanded for a new trial. Costs to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ MELVIN L. RESNICK, J.
JAMES R. SHERCK, J., MARK L. PIETRYKOWSKI, J., CONCUR.