JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Anwar Caldwell appeals from his convictions after a jury trial on two counts of felonious assault, each with a peace officer specification.[1]
 {¶ 2} Caldwell argues the fairness of his trial was tainted by the prosecutor's improper questions and comments, by the trial court's exclusion of evidence sought to be presented by the defense, and by deficient representation trial counsel provided to him. Caldwell additionally argues the consecutive sentences the trial court imposed for the offenses are unlawful.
 {¶ 3} Following a review of the record in this case, this court disagrees. Caldwell's convictions and sentences, therefore, are affirmed.
 {¶ 4} Caldwell's convictions result from an incident that occurred on the morning of June 15, 2001. The incident began when Cleveland police officers attempted to effect a traffic stop of the vehicle Caldwell drove. Rather than to determine the officers' reasons for the stop, Caldwell instead fled from the area of Wade Park Avenue onto the interstate highway system. Caldwell's girlfriend Latasha Mason was a front-seat passenger in the vehicle.
 {¶ 5} Caldwell's route took him from Interstate 71 onto the "Jennings Freeway;"[2] He eventually exited onto Brookpark Road and proceeded westbound. When he had passed out of the Cleveland officers' jurisdiction, they radioed the Parma police to alert them concerning Caldwell's flight. Parma officers thereupon took up the chase.
 {¶ 6} Caldwell drove at a high rate of speed on the busy roadway with several patrol vehicles in pursuit. The officers could see Mason gesturing frantically at the driver with a frightened expression on her face. Since efforts to direct Caldwell's course of flight proved unsuccessful, a roadblock was placed in his path at the intersection of West 130th Street. There, four Parma police cruisers attempted to surround Caldwell's vehicle.
 {¶ 7} Parma patrolman James Manzo had positioned his cruiser northbound on West 130th Street. When he attempted to exit it, however, Caldwell's vehicle "just came speeding at [him]." Manzo hurriedly drew his leg back inside just as Caldwell's vehicle "slammed into" the driver's side, scraped along it, and pushed it aside. Caldwell then drove "right for [Parma] Patrolman [David} Ferrante," who stood near his own cruiser. Ferrante was forced to leap away in order to avoid being struck; Caldwell then continued southbound.
 {¶ 8} His progress, however, was thwarted by a train traveling eastbound on tracks that crossed West 130th Street. Rather than halting his vehicle, Caldwell maneuvered it past the barriers and drove westbound on the gravel path alongside the tracks. As he proceeded, his vehicle's tires began to shred; his speed slowed considerably.
 {¶ 9} Lt. Kim Cornachio and his partner were en route to the area and moved to intercept Caldwell only to find the road blocked by the slowly-moving train. Cornachio stopped his cruiser, assessed the situation, and made a decision "to go through the train."
 {¶ 10} Since the train's pace was at only a crawl, Cornachio climbed one of its ladders to pass through the coupling area. He then "dropped down" to the ground on the other side. Upon gaining his balance he, observed Caldwell's vehicle was approximately "100 feet away," and "coming at [him]." Cornachio used his hands to signal Caldwell to stop; however, "the car just kept accelerating toward [him]."
 {¶ 11} At that point, Cornachio drew his service weapon, aimed "low" and to the left away from the front of Caldwell's vehicle, and fired a "warning shot." He saw that upon comprehending Cornachio's action, Caldwell positioned himself lower in the driver's seat so that his eyes were just above the dashboard before driving directly at the lieutenant. Cornachio had little room to maneuver; his only route of escape, therefore, was to dash forward for the gap between the rear of Caldwell's vehicle and the side of the moving train. Cornachio fired his handgun several more times at Caldwell as he did so.
 {¶ 12} Caldwell continued past Cornachio only to be apprehended a few minutes later by members of the Brook Park police force. They discovered he required medical treatment for gunshot wounds to his chest and legs. Caldwell told medical personnel he had ingested PCP prior to the chase.
 {¶ 13} Caldwell subsequently was indicted on six counts. The first two charged him with violation of R.C. 2921.331, failure to comply with order or signal of a police officer; each count contained a furthermore clause that the offender's actions caused a substantial risk of serious physical harm. The remaining four counts charged Caldwell with violation of R.C. 2903.11, felonious assault; each count contained a peace officer specification. Caldwell's case proceeded to a jury trial.
 {¶ 14} The state presented the testimony of several police officers involved in the pursuit, Mason, and a civilian whose vehicle was commandeered for service during the chase. Caldwell testified in his own behalf and also called Mason as a defense witness; however, defense counsel's efforts to introduce evidence of newspaper reports and Cornachio's police service record proved unsuccessful.
 {¶ 15} The jury ultimately returned verdicts of guilty against Caldwell on the first two counts and on the felonious assault charges with specifications that pertained to Ferrante and Cornachio. The jury found Caldwell not guilty of the remaining two counts.
 {¶ 16} Following a presentence investigation and report, the trial court sentenced Caldwell to terms of incarceration as follows: three years each for his two convictions for violation of R.C. 2921.331, failure to obey the signal or order of a police officer, the terms to be served concurrently with each other but consecutively with consecutive terms of seven years on each of the two convictions for felonious assault upon a peace officer. Caldwell thus was sentenced to a total term of seventeen years.
 {¶ 17} In challenging his convictions and sentences, Caldwell presents four assignments of error. His first states:
 {¶ 18} "I. Anwar Caldwell was denied his constitutional right to a fair trial by the repeated instances of prosecutorial misconduct during his trial."
 {¶ 19} Caldwell argues improper questions of witnesses and comments during closing argument compromised the fairness of his trial. Since Caldwell failed to object to the questions and comments he now challenges, he contends they constituted plain error pursuant to Crim.R. 52(B). This court disagrees.
 {¶ 20} Generally, the conduct of a prosecuting attorney during a trial cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. State v. Papp (1978), 64 Ohio App.2d 203, cited with approval, State v. Maurer (1984), 15 Ohio St.3d 239. Moreover, it has been held the trial court must afford the prosecutor some latitude and freedom of expression during argument. State v. Apanovich (1987),33 Ohio St.3d 19; State v. Vrona (1988), 47 Ohio App.3d 145. A defendant shall be entitled to a new trial, therefore, only when a prosecutor either asks improper questions or makes improper remarks and those actions substantially prejudice the defendant. State v. Smith (1984),14 Ohio St.3d 13; State v. Keenan (1993), 66 Ohio St.3d 402.
 {¶ 21} In addition to the foregoing, the supreme court consistently has cautioned that appellate notice of plain error is to be taken with "utmost caution," under "exceptional circumstances," and only to prevent a "manifest miscarriage of justice." State v. Hill,92 Ohio St.3d 191, 2001-Ohio-141, citing State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. Thus, even if error occurred, it also must be examined in light of the entire trial in order to determine if the trial's outcome would have been different absent the error. Id. The questions and comments Caldwell now challenges meet none of the foregoing stringent standards.
 {¶ 22} First, it must be noted the defense strategy in this case was to concede Caldwell committed the relatively minor offenses of failing to comply with police orders, but to dispute the police officers' accounts that Caldwell deliberately used his vehicle as a weapon. For example, during defense counsel's cross-examination of Ferrante, counsel asked Ferrante if his version of the incident were "not true, if this is a lie, then the charge [of felonious assault] against [my client] does not stand, is that correct?" Ferrante eventually acknowledged counsel was correct. This line of questioning, therefore, "invited" the claim of error Caldwell now raises. Consequently, it cannot constitute plain error. State v. Woodruff (1983), 10 Ohio App.3d 326.
 {¶ 23} Second, in context, the questions and comments made by the prosecutor that Caldwell now challenges were presented as a response to Caldwell's assertion of a police "conspiracy." The prosecutor sought Caldwell's explanation for the officers' motive for engaging in such a plan. See, e.g., State v. Greer (1988), 39 Ohio St.3d 236.
 {¶ 24} Finally, a review of the record demonstrates the prosecutor neither drew unreasonable inferences from the evidence presented, nor "permeated" the proceedings so as to deny Caldwell his right to a fair trial with a "few improper statements" during final argument. State v.Treesh, 90 Ohio St.3d 460, 468, 2001-Ohio-4.
 {¶ 25} Based upon the foregoing, Caldwell's first assignment of error lacks merit. Accordingly, it is overruled.
 {¶ 26} Caldwell's second assignment of error states:
 {¶ 27} "II. Anwar Caldwell was denied his constitutional right to confront the witnesses against him, when the court improperly excluded impeachment evidence which the defense sought to introduce."
 {¶ 28} Caldwell argues the trial court's refusal to admit certain impeachment evidence limited his right of confrontation. He is incorrect.
 {¶ 29} An accused is not denied his constitutional right to confront witnesses by the exclusion of "evidence that is inadmissible under standard rules of evidence." State v. Blankenship (1995),102 Ohio App.3d 534, 550, citing Taylor v. Illinois (1988), 484 U.S. 400,410. A trial court's decision as to the admission or exclusion of evidence, moreover, will not be reversed absent an abuse of discretion.State v. Lundy (1987), 41 Ohio App.3d 163. Clearly, the exclusion of inadmissable evidence cannot constitute an abuse of discretion.
 {¶ 30} The trial court properly foreclosed Caldwell's attempt to use "newspaper accounts" of the details of the incident in his cross-examination of the police officers, since these articles constituted classic hearsay. Evid.R. 802; Evid.R. 801(A); see, also,State v. York (1996), 115 Ohio App.3d 245. Similarly, the trial court acted within its prerogative in preventing Caldwell from calling The Cleveland Police Department's spokesperson as a defense witness since the spokesperson's information concerning the incident came only from others. Id.
 {¶ 31} Furthermore, the trial court did not err in refusing to permit the defense to introduce evidence that Cornachio may have been involved in other shootings. Such evidence was irrelevant to the issue of Caldwell's guilt or innocence. Evid.R. 401; Evid.R. 402; State v. Yost
(1986), 33 Ohio App.3d 173.
 {¶ 32} Thus, the trial court did not err in excluding the evidence Caldwell sought to introduce. Caldwell's second assignment of error, accordingly, is overruled.
 {¶ 33} Caldwell's third assignment of error states:
 {¶ 34} "III. Trial counsel's deficient representation denied Anwar Caldwell of his constitutional right to effective assistance of counsel."
 {¶ 35} Caldwell asserts his trial counsel provided constitutionally ineffective assistance. He supports this assertion by contending counsel should have objected to the prosecutor's improper questions of witnesses and remarks during closing argument.
 {¶ 36} The claim of ineffective assistance of counsel requires proof that "counsel's performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976),48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v.Bradley, supra, paragraph three of the syllabus.
 {¶ 37} The burden is on appellant to prove ineffectiveness of counsel. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id. It follows that counsel is required neither to perform a vain act nor to raise objections if they merely might serve to undermine the jury's impartiality. State v. Holly (July 8, 1999), Cuyahoga App. No. 74452; State v. Kelly (July 12, 2001), Cuyahoga App. No. 78422.
 {¶ 38} In Caldwell's case, this court's disposition of his first assignment of error negates the support he provides for this one. It also must be noted that defense counsel's strategy in the face of overwhelming evidence against his client was sound. Counsel chose to dispute the officers' accounts Caldwell used his vehicle as a weapon against them. Since the jury acquitted Caldwell of two of the four felonious assault charges, counsel's strategy substantially was successful.
 {¶ 39} Caldwell, therefore, cannot demonstrate either requirement for a successful claim of ineffective assistance of counsel. State v.Bradley, supra. Accordingly, his third assignment of error also is overruled.
 {¶ 40} Caldwell's fourth assignment of error states:
 {¶ 41} "IV. Anwar Caldwell has been deprived of his liberty without due process of law by the consecutive sentences imposed on him as said sentences do not comport with Ohio's new sentencing structure."
 {¶ 42} Caldwell argues the trial court failed to make the necessary findings prior to ordering his sentences on the two counts of felonious assault to be served consecutively. His argument, however, lacks foundation.
 {¶ 43} R.C. 2929.14 (E)(4) directs the trial court to make three findings in order to justify the imposition of consecutive sentences. In this case, the trial court completely complied with this directive by stating as follows:
 {¶ 44} "The defendant has been convicted of four crimes, two being felonies of the third degree and two being felonies of the first degree. Defendant has the burden of overcoming the presumption of incarceration for which (sic) Senate Bill 2 mandates. Defendant has failed to overcome that presumption.
 {¶ 45} The Court finds that the defendant engaged in criminal behavior which was much more than momentary in duration; that the defendant was pursued by police officers from three jurisdictions through each of those jurisdictions * * *; that the defendant's vehicle was driven at times at rates of speed in excess of 100 miles per hour; and that the defendant by his own admission to healthcare professionals was under the influence of an illegal drug.
 {¶ 46} The defendant operated the motor vehicle through at least four traffic signals of all the jurisdictions involved; and, furthermore, committed a variety of moving violations including operating left of center, speeding, and going around a railroad crossing gate which was in a down position.
 {¶ 47} The Court finds that the defendant endangered not only the lives of numerous police officers who were involved in the pursuit, but also the lives of all persons who were traveling on the roads and highways of Cleveland, Parma and Brook Park, Ohio in the late morning hours of June 15, 2001.
 {¶ 48} The Court finds that the defendant also endangered the life and safety of a passenger in the car in which he was driving.
 {¶ 49} The sentences to be imposed are so imposed as this Court finds and such sentences are necessary to protect the public, to punish you and that such sentences are not disproportionate to the seriousness of your conduct on June 15, 2001; and the harm caused by these multiple offenses was so unusual that no single prison term would adequately reflect the extraordinary seriousness of your conduct.
 {¶ 50} The shortest term of incarceration would only serve to demean the seriousness of your conduct. The defendant, who was 22 years of age at the time he committed these crimes, has demonstrated by his actions no concern for human life, no regard for the authority of law enforcement officers and no concern for himself or his passenger. No respect for the laws of our community."
 {¶ 51} As the foregoing demonstrates, the trial court not only set forth each of the necessary factors, but also gave its reasons for selecting consecutive terms. State v. Edmonson, 86 Ohio St.3d 324,1999-Ohio-110; State v. Howard (Feb. 7, 2002), Cuyahoga App. No. 79208.
 {¶ 52} Caldwell's fourth assignment of error, therefore, also is overruled.
 {¶ 53} Caldwell's convictions and sentences are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J. and JAMES J. SWEENEY, J. CONCUR
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Caldwell does not challenge his additional convictions on two counts of failure to comply with order or signal of a police officer.
[2] Quotes indicate testimony given by a witness at Caldwell's trial.