JOURNAL ENTRY AND OPINION
This is an appeal from the judgment of the trial court which, after a jury trial, found the Defendant-Appellant Terrell Hardwick ("defendant") guilty of aggravated robbery with a firearm, felonious assault with a firearm, having a weapon while under disability and attempted murder with a firearm. For the reasons set forth below, we affirm the judgment of the trial court.
Defendant Hardwick was indicted pursuant to four count indictment which charged him with one count of aggravated robbery in violation of R.C.2911.01 with a firearm specification, one count of felonious assault in violation of R.C. 2903.11 with a firearm specification, having a weapon under disability in violation of R.C. 2923.13 and one count of attempted murder in violation of R.C. 2923.02/2903.02 with a firearm specification. The matter proceeded to a jury trial on March 29, 2001. After the close of the state's case in chief, the defense moved for a judgment of acquittal, pursuant to Cramer 29, which was denied. On April 2, 20001, the jury returned a guilty verdict on all counts.
The state's evidence revealed that on August 15, 2000 at approximately 9:45 p.m., Anthony Johnson was returning to his New York Avenue home in Cleveland after visiting a relative. After backing his car into his garage and getting out of his car, Mr. Johnson pulled down the garage door. Mr. Johnson testified that as he was bending down to close the garage door, he looked up and saw the defendant running around from the side of his porch. The defendant was carrying a gun and quickly approached Mr. Johnson. According to Mr. Johnson's testimony, the defendant put the gun to his head and stated "give me the money, mother f* * *, before I kill you." (T. 132) At that point, the defendant allegedly hit Mr. Johnson on the top of his head with the gun, took the cell phone that was in his hand and stated "I'm not playing with you mother f* * *. Give me the money." (T. 133) Mr. Johnson testified that at that point, the two men began wrestling. Mr. Johnson stated that the defendant kept saying that he was going to kill him, so Mr. Johnson grabbed the gun. As they were wrestling, the defendant allegedly shot Mr. Johnson in the head. The two continued to wrestle while Mr. Johnson bled profusely. As the struggle continued, Mr. Johnson managed to grab the gun and put his finger down the barrel to prevent the defendant from shooting him again. The defendant shot Mr. Johnson again, this time in the right forearm. The defendant allegedly twisted Mr. Johnson's finger at this point trying to retrieve the gun. Mr. Johnson testified that the defendant at this point had his cash, wallet, cell phone, and watch and was screaming to the defendant to get out of his yard. Mr. Johnson stated that the defendant repeatedly threatened to kill him. The defendant eventually fled. Shortly thereafter Cleveland Police officers arrived at the scene. Mr. Johnson was taken by EMS to the hospital for treatment and released the next day.
On direct examination, Mr. Johnson described the defendant as wearing a red cap, a plaid white lumberjack-like outer shirt with another shirt on underneath. He further described him as a young black male with medium brown skin, a very short haircut and not a lot of facial hair.
A few days after the incident, Mr. Johnson testified that a neighbor who witnessed the events saw a Terrell or Terrence who lived down the street, flee from the scene. Mr. Johnson contacted the officer who responded to the scene and gave her Terrell's address. Mr. Johnson stated that he identified the defendant in a photo line-up that was brought to his house by the Cleveland Police.
On cross-examination, Mr. Johnson admitted to having no more than four beers at a relative's house before coming home and being assaulted. Mr. Johnson, however, denied being drunk on the night in question. Mr. Johnson also admitted that after the defendant hit him in the head, he was bleeding everywhere and there was blood in his eyes. Mr. Johnson admitted that, while he was fighting for his life, his attention was not always focused on the defendant's face.
The state also presented testimony of Officer Bragg of the Cleveland Police Department, who responded to the call on the night in question. She stated that when she arrived at the scene, she found Mr. Johnson sitting on his back stairs, holding a rag to his head. She stated that there was blood everywhere. Officer Bragg talked to Mr. Johnson to obtain a description of the assailant. She stated that Mr. Johnson identified the man as a tall black and that he said to her "I'll never forget his eyes. He had light eyes." (T. 185) At the scene of the crime, Officer Bragg found a bullet casing by the gate, a dent in the house next door which, upon further investigation was determined to be from a bullet, bullet fragments below the dent and cigarette butts lying on the ground.
Officer Bragg testified that a few days after the incident, she received a call from Mr. Johnson about the identity of his assailant. Mr. Johnson gave the officer the defendant's address. With her partner that evening, Officer Bragg went to the defendant's home to ask him a few questions. Officer Bragg stated that the defendant answered the door and immediately she was shocked by how the initial description given by Mr. Johnson so perfectly matched the defendant's appearance. Officer Bragg testified that they questioned the defendant in their zone car. She also stated that they noticed that the defendant had several marks on his head and hands that indicated to them that he had been involved in a fight. When the defendant was questioned about his injuries, he stated that he had been jumped two days prior by a man named Terry Williams, later to be determined to be Terry Page.
On the advice of her supervisor, Officer Bragg did not arrest the defendant that night.
Testimony of Terry Page revealed that a few days after the assault on Mr. Johnson, Mr. Page and the defendant were together. Mr. Page testified that he and the defendant got in a little argument about where they were going in Mr. Page's car. Mr. Page testified that the argument did not turn physical, rather their encounter ended when Mr. Page stopped the car to let the defendant out. On cross-examination, Mr. Page admitted that he was on parole the night he was with the defendant.
After the state rested, the defense called Mr. Johnson to the stand. Mr. Johnson admitted that his deposition had been taken in January of 2001 and was asked "And were you able to see what color his eyes were?" Mr. Johnson's response in his deposition was "Actually I wasn't paying attention to the color of his eyes." The defense presented no other testimony but introduced the defendant's treatment records from the Free Clinic in order to prove the defendant had an alibi. The record indicated that the defendant finished his drug treatment session on the night in question at 9:10 p.m., leaving only 35 minutes to arrive at the victim's home and assault him before police responded. Also included in the Free Clinic records was defendant's treatment records which indicated that he had a history of violent tendencies toward men and women, a history of drug and alcohol abuse, and a prior criminal history.
After jury deliberations, the defendant was found guilty on all charges in the indictment. It is from this ruling that the defendant now appeals, asserting six assignments of error for our review.
 I. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS OWN ATTORNEY INTRODUCED DOCUMENTARY EVIDENCE OF HIS PRIOR CONVICTIONS, VIOLENT HISTORY AND DRUG AND ALCOHOL ADDICTION.
The defendant contends that he was denied effective assistance of counsel when his attorney introduced documentary evidence to support his alibi which contained information about his prior convictions, his history of violence and drug and alcohol addiction. We disagree.
In evaluating defendant's claims we note that, in establishing a claim of ineffective assistance of trial counsel, it is clear that a defendant must make a two-part showing:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington (1986), 466 U.S. 668, 687, 80 L.Ed.2d 674,104 S.Ct. 2052. Accord State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph two of the syllabus. The Strickland court also cautioned courts examining the issue that:
 Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac (1982), 456 U.S. 107, 133-134, 71 L.Ed.2d 783, 102 S.Ct. 1558. * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'
466 U.S. at 689. See, also, State v. Frazier (1991), 61 Ohio St.3d 247,253, 574 N.E.2d 483. Debatable trial tactics do not constitute ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 49, 402 N.E.2d 1189.
Defense counsel introduced the defendant's medical records to support the defendant's alibi, demonstrating the defendant's whereabouts at 9:10 p.m., just prior to the incident. Defense counsel hoped that the jury would infer that the defendant did not have enough time to leave the Free Clinic, travel 25-30 minutes and then assault the victim before the police arrived at 9:45 p.m. This was a trial tactic of defense counsel, as he explained in his closing arguments:
 * * * These are the Free Clinic of Greater Cleveland medical treatment records located on 120th and Euclid. The records regarding Terrell Hardwick [sic]. Some part of me says you know what, Jim, you shouldn't put it in because it will show he was there for drug treatment. Shouldn't hold it against him the fact that he was there for drug treatment, what this will tell you without question is * * *.
(T. 320)
While we agree that the information contained in the reports may have been damaging to the defendant, we cannot say that counsel's performance in presenting evidence of an alibi for the defendant was altogether deficient.
Furthermore, we cannot say that, absent the information contained therein, there was a high probability that the jury would have found the defendant not guilty. Mr. Johnson identified the defendant from a photo lineup. There was corroborating testimony from a police officer that the defendant fit the description given to her on the night of the incident. There was evidence that the defendant had injuries as a result of a struggle, which, given the conflicting testimony in that regard, the jury was entitled to believe was from the night of the assault on the Mr. Johnson. Therefore, this assignment of error is without merit.
 II. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S RULE 29 MOTION WHEN THE STATE FAILED TO OFFER EVIDENCE SUFFICIENT TO SUSTAIN A CONVICTION ON THE ATTEMPTED MURDER CHARGE.
 III. THE JURY'S DECISION FINDING THE DEFENDANT GUILTY OF ATTEMPTED MURDER WAS NOT SUPPORTED BY SUFFICIENT PROBATIVE EVIDENCE.
The defendant, in his second and third fourth assignments of error, challenges the sufficiency and manifest weight of the attempted murder charge. Specifically, the defendant contends that the trial court erred in denying a motion for acquittal and that the jury erred in returning a guilty verdict. We disagree.
In State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, the Court described the role of the appellate court in reviewing a challenge to the sufficiency of the evidence supporting a conviction:
 An appellate court's function when reviewing the sufficiency of evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Id., at paragraph two of the syllabus, citing Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
With regard to the substantive aspects of defendant's contentions we note that R.C. 2903 (A) defines murder as "No person shall purposely cause the death of another * * *." Attempt is defined in R.C. 2923.02
as:
 (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
Attempt involves more than the mere intent to commit a crime, and is more than preparation for the crime. State v. Woods (1976),48 Ohio St.2d 127, 357 N.E.2d 1059. Attempt occurs if the defendant takes a substantial step in a course of conduct planned to culminate in commission of the crime. Id. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose.Id. The overt acts of the defendant must convincingly demonstrate a firm purpose to commit a crime. Id.
In the case sub judice, as a part of the state's case in chief, there was extensive testimony by the victim that the defendant, while struggling with the victim, stated in very certain terms that he intended to kill the victim. Furthermore, the defendant shot the victim in the head, which would be considered by most a very good indication that one intends to murder his victim. Viewing the facts in a light favorable to the prosecution, we find the victim's testimony that the defendant repeatedly threatened to kill him and the fact that the defendant took substantial steps to murder the victim by shooting him in head constitute sufficient evidence upon which to deny a motion for acquittal and to support a guilty verdict on the charge.
 IV. THE JURY'S DECISION FINDING THE DEFENDANT GUILTY OF ATTEMPTED MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, citing Tibbsv. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926.
In light of the foregoing analysis in the two previous assignments of error, we cannot say that jury lost its way and created such a manifest miscarriage of justice such that the conviction is against the manifest weight of the evidence. Therefore this assignments of error is not well taken.
 V. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT AT TRIAL WHICH SUBSTANTIALLY PREJUDICED AND MISLED THE JURY.
The defendant contends that the prosecutors statement at the end of his closing argument constituted prosecutorial misconduct and substantially prejudiced the jury. We disagree.
Considerable latitude is permitted in closing arguments. State v.Maurer (1984), 15 Ohio St.3d 239, 269, 473 N.E.2d 768. The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883; State v. Lott (1990), 51 Ohio St.3d 160, 165,555 N.E.2d 293. The conduct of a prosecuting attorney during the course of trial cannot be made a ground for error unless that conduct deprived the defendant of a fair trial. State v. Papp (1978), 64 Ohio App.2d 203,412 N.E.2d 401.
In analyzing this assignment of error, we must determine whether, absent the improper questions or remarks, the jury still would have found the defendant guilty. State v. Maurer (1984), 15 Ohio St.3d 239, 266,473 N.E.2d 768. State v. Vrona (1988), 47 Ohio App.3d 145,547 N.E.2d 1189. The closing argument is considered in its entirety to determine whether it was prejudicial. State v. Moritz (1980),63 Ohio St.2d 150, 157, 407 N.E.2d 1268.
In this case, we cannot say that the one sentence at the end of the state's lengthy closing argument, "* * * he had a prior conviction * * *," (T. 307) was prejudicial to the defendant. There was evidence in the record to support his conviction and it cannot be said that absent that last sentence the defendant would have been found not guilty. Furthermore, discussed infra, the trial court gave curative instructions with regard to the prosecutor's statement. Therefore, the defendant was not prejudiced by the prosecutor's statement. This assignment of error is not well taken.
 VI. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A MISTRIAL AFTER THE PROSECUTOR MENTIONED THE DEFENDANT'S PRIOR CONVICTION IN CLOSING ARGUMENT.
The defendant argues that the court erred in denying the defendant's motion for a mistrial because the curative instructions given by the trial court could not and did not cure the harm caused by the prosecutor's reference to the defendant's prior conviction. The defendant submits that despite the general presumption that jurors follow curative instructions, such a presumption is not rationally justified. We disagree.
The grant or denial of an order of mistrial lies within the sound discretion of the trial court. State v. Garner (1995), 74 Ohio St.3d 49,59, 656 N.E.2d 623. Absent a showing that the accused suffered material prejudice, a reviewing court will not disturb the exercise of that discretion. State v. Sage (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343. "Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." Garner, supra. Moreover, a jury is presumed to follow the instructions, including curative instructions, given it by a trial judge. See State v. Loza
(1994), 71 Ohio St.3d 61, 75, 641 N.E.2d 1082.
In this case, the state at the very end of its closing argument stated, "* * * he had a prior conviction," (T. 307) in direct contravention to stipulation with defense counsel. Defense counsel immediately moved for a mistrial, which the trial court denied. Instead, the trial court opted to give curative instructions to the jury, stating:
 The Court is going to strike from the opening closing argument of prosecution any reference to any alleged previous criminal conviction of the defendant. You are not to consider anything, any allegation of any alleged prior criminal conduct for any purpose whatsoever in your deliberations, and I specifically strike that from the record. Does everybody understand?
(T. 310)
Despite the defendant's contention, it is presumed that the jurors followed this curative instruction. Therefore, the trial court did not abuse its discretion in denying the motion.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., AND MICHAEL J. CORRIGAN, J., CONCUR.