JOURNAL ENTRY AND OPINION
This is an appeal from the judgment of the trial court which, after a jury trial, found the Defendant-appellant Kyle Woods ("defendant") guilty of assault, aggravated robbery and kidnapping, not guilty of the firearm specifications and not guilty of carrying a concealed weapon. After a bench trial on one count of having a weapon under a disability, the trial court found the defendant not guilty. The defendant was subsequently sentenced. For the reasons set forth below, we affirm the judgment of the trial court.
Defendant was indicted pursuant to a twelve count indictment which charged him with: three counts of felonious assault in violation of R.C.2903.11, three counts of aggravated robbery in violation of R.C. 2911.01
with firearm specifications, three counts of kidnapping in violation of R.C. 2911.11 with firearm specifications, one count of carrying a concealed weapon in violation of R.C. 2923.12 and one count of having a weapon under a disability in violation of R.C. 2923.13. The defendant waived his right to a trial by jury on count twelve, having a weapon under a disability. The matter proceeded to a jury trial on the remaining eleven counts on March 12, 2001.
On August 28, 2000 Gregor and Richard Rigo, and house guests David DeBow, and Tom Serbic were together at the Rigo's home in Strongsville. Gregor Rigo had gone to bed several hours before the others. Just before 2:00 in the morning, all of the boys had gone to sleep. While Gregor and Richard Rigo were in their bedrooms on the second floor, DeBow, an overnight guest, slept on the couch. Serbic, who was temporarily living with the Rigo's at the time, slept in the basement. At approximately 2:00 in the morning, all were awoken when, after rapping loudly at the front door, a group of men broke into the Rigo home. All but Serbic, who stayed in the basement during the entire incident, were assaulted. Shortly after the incident while police were responding to the call, a state trooper detained a vehicle that was speeding and had three males in it. The officer stopped the vehicle and noticed a gun in plain view and the car was detained. The victims were eventually brought to the scene where the car was being detained to identify the males as possible perpetrators of the break-in at the Rigo home. One of the males was identified on the scene as a perpetrator of the Rigo break-in.
The state presented testimony of Richard Rigo, who stated that he heard the banging on the front door but was too tired to answer it. He then heard his dad, Gregor, screaming "get the f*** out," at which time Richard turned on his light, swung out of bed and stood up. Richard further testified that his bedroom door then swung open and a guy charged at him, hit him on the head with a gun as he lay on his bed trying to shield himself. He stated that there were at least two or three individuals in his room. The men were beating and kicking Richard while repeatedly demanding marijuana and money. Richard testified that he gave the men money that was in his wallet, but did not have any marijuana to give them. He stated that one of the males that entered his room was wearing a white tee shirt and black pants with braided hair. The other was wearing all black and both had doo rags with strings attached that covered their faces. The men eventually left Richard's room and he remained there quietly for a few minutes until he thought it was safe. Richard testified that he walked to his dad's room where he found him bleeding profusely and on the phone with emergency services. The police arrived shortly there-after. He stated that the entire incident lasted only a few minutes. Approximately ten minutes after the incident, Richard was taken to a location on the highway to make an identification of possible suspects. He testified that he identified the first person to enter his bedroom. On cross-examination, Richard admitted to dealing with marijuana in small amounts in the past. He also admitted to smoking marijuana on August 28th and to owning marijuana paraphernalia.
The state presented testimony of David DeBow who was also assaulted in the Rigo house on August 28th. DeBow stated that he was lying on the couch trying to sleep when he heard the rap at the door. He went to answer the door and as soon as he unlatched the dead bolt, the door was kicked open. DeBow testified that he saw three to four males come in the house. While standing in the foyer, he was immediately struck by a male holding a silver-handled gun and was pushed into the wall. One of the males put the gun to his head and demanded to know where the money and drugs were located. DeBow was eventually forced to the floor and the males told him to lay down and stay there, which he did. DeBow testified that initially he saw three to four males come in the house, but as he was laying there he heard more people come into the house. He testified that he heard them go upstairs into Gregor and Richard's rooms.
On cross-examination, DeBow admitted that it was possible that the noises he heard that he thought may have been more males entering could have been the same males in the house leaving and coming back in.
Gregor Rigo's testimony corroborated the events as described by the previous witnesses. Rigo testified that after the incident upstairs, he was able to see five males going downstairs. While he was not wearing his glasses and could not identify the suspects' faces, he was able to see five blurry images of people going downstairs. Rigo described his injuries. He stated that as soon as the males started going downstairs he called the police.
On cross-examination Rigo admitted that he sustained injury to his eyes during the altercation. He admitted that he lost consciousness for a short time after being hit. Rigo testified that he woke up and then saw the males going downstairs.
The state also presented testimony of Officer Eric Sheppard, a highway patrol officer for the State of Ohio, who pulled over a vehicle on the interstate because of a speeding violation in a construction zone. The officer testified that Kyle Woods and two other individuals were in the car. He noticed a .22 caliber gun in plain view. The officer confiscated a wallet, which was later discovered to be Richard Rigo's wallet. The officer also testified that a gun that was thrown out the window of the vehicle was later recovered from the vicinity. The officer testified that when asked his name, Kyle Woods gave the name Pierre Woods and was wearing a white button down short-sleeve shirt that was unbuttoned. The officer testified that Kyle Woods was not incoherent at the time of the stop and understood the officer's questions.
The state also presented testimony of Marius Smith, a co-defendant in the case. Mr. Smith testified that he and four others were smoking marijuana and drinking all day. Traveling in two cars, the males went to a friend's house to have their hair braided. Two others, including the defendant, later joined the group. Mr. Smith testified that the defendant did not have his hair braided. Later, the group decided to go to Strongsville to buy some more marijuana. Mr. Smith stated that they broke into the Rigo home. He testified that all seven individuals, including the defendant, participated in the robbery. He further testified that the defendant went upstairs. Mr. Smith stated that after they left, he got into a car. Just before it was stopped by the police, someone threw a gun out of the window. On cross-examination, Mr. Smith admitted that he was testifying in exchange for a plea bargain with the State of Ohio.
The defense presented testimony of Marcus Waters, another co-defendant. Mr. Waters testified that the defendant did not go into the Rigo home at the time of the robbery. On cross-examination, however, Mr. Waters admitted that in his initial report to police on August 28th, he told the police that everyone had gotten out of the cars that evening and gone into the Rigo house.
The jury found the defendant guilty of the first ten counts, not guilty of the firearm specifications and not guilty on count eleven, carrying a concealed weapon. After a bench trial on count twelve, the trial court found the defendant not guilty of having a weapon under disability. It is from this ruling that the defendant appeals, asserting three assignments of error for our review.
 I. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO PROFFER OR OBJECT AND THEREBY PRESERVE FOR APPEAL THE ISSUE OF THE COURT'S ERROR IN RULING ON THE MOTION IN LIMINE.
Prior to trial, the defense filed a motion in limine to exclude prior convictions of the defendant from coming into evidence. The court granted the motion, subject to the prosecution's use for impeachment purposes only, pursuant to Evid.R. 609. Defense counsel did not object to this ruling. The defendant did not testify at trial nor did trial counsel proffer the defendant's testimony for the record. The defendant argues that as a result, trial counsel was ineffective.
In evaluating defendant's claims we note that in establishing a claim of ineffective assistance of trial counsel, it is clear that a defendant must make a two-part showing:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington (1986), 466 U.S. 668, 687, 104 S.Ct. 2052. Accord State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. The Strickland court also cautioned courts examining the issue that:
 Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac
(1982), 456 U.S. 107, 133-134, 71 L.Ed.2d 783, 102 S. Ct. 1558. * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'
466 U.S. at 689. See, also, State v. Frazier (1991), 61 Ohio St.3d 247,253, 574 N.E.2d 483.
An attorney is presumed to be competent. State v. Lott (1990)51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017,111 S.Ct. 591, and State v. Smith (1985), 17 Ohio St.3d 98, 100,477 N.E.2d 1128. An appellant bears the burden of proving his claim of ineffective assistance of counsel. Id.
In this case, the defendant has not met his burden as set forth inStrickland. The defendant must prove the essential element that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Bradley, supra. at syllabus paragraph 3.
Here, the defendant alleges that had trial counsel properly objected to the trial court's ruling on the motion in limine, or in the alternative, had trial counsel proffered defendant's testimony, the trial court's ruling allowing the introduction of prior convictions for impeachment purposes would have been preserved for review. We disagree.
The United States Supreme Court has held that to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify. Luce v. United States (1984), 469 U.S. 38,105 S.Ct. 460. The Court reasoned that in order to perform the weighing of the prior conviction's probative value against its prejudicial effect pursuant to Evid.R. 609, "the reviewing court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify." Id. Furthermore, the Court noted, "Requiring a defendant to make a proffer of testimony is no answer; his trial testimony could, for any number of reasons, differ from the proffer."Id. at n5. Therefore, any proffer by the defendant's trial counsel would have been futile; the only way to preserve the issue for review would have been to put the defendant on the stand.
The defendant contends that the reason the defendant did not take the stand at trial was because the motion in limine was granted subject to the prosecution's use for impeachment purposes. However, as the Luce
Court aptly stated:
 Because an accused's decision whether to testify `seldom turns on the resolution of one factor,' New Jersey v. Portash (1979), 440 U.S. 450, 467 (BLACKMUN, J., dissenting), a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify * * *
Following the directive of the United States Supreme Court, this court cannot assume that the defendant would have taken the stand and testified on his own behalf had the trial court ruled differently on the motion in limine.
The defendant has failed to prove the essential element of theStrickland test that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different. We therefore reject this claim.
 II. THE JURY'S DECISION FINDING THE DEFENDANT GUILTY OF THESE CRIMES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, citing Tibbsv. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926. The credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. State v. Antill (1964),176 Ohio St.2d 61, 197 N.E.2d 548; State v. DeHaas (1967),10 Ohio St.2d 230, 227 N.E.2d 212.
In the case sub judice, the jury was faced with the task of evaluating the credibility of the prosecution's witnesses and the credibility of the defendant's witnesses, who provided conflicting testimony regarding the defendant's participation in the robbery.
With regard to the charge of assault, the state presented credible testimony that all three individuals sustained head injuries and were beaten by the men who broke in. All three victims suffered serious physical harm. Additionally, with regard to aggravated robbery, there was extensive testimony by the victims and even a co-defendant that the men intended to steal and demanded money and marijuana while in the Rigo home. Richard Rigo's wallet was also recovered later in the stopped automobile driven by the perpetrators. Lastly, the victims testified that they were held against their will at gun point, thus satisfying the charge of the kidnapping.
As far as the defendant's participation in the events, there was testimony from Richard Rigo, who stated that one of the individuals who was in his room was wearing a white tee shirt and dark pants. There was also testimony from DeBow, another victim, who stated that four individuals initially came in the house, and that shortly thereafter he heard more people come in the house. Lastly, there was testimony from a co-defendant that the defendant, Kyle Woods went into the house and committed the robbery with the other males. While the defense presented testimony of another co-defendant, Mr. Waters who stated that the defendant did not go into the home, this testimony was in direct conflict with a statement given to the police the day of the incident. After weighing the conflicting testimony in this regard, the jury determined that the defendant was, in fact present and did participate in the assaults.
Again, the credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. Antill, supra. We cannot say that the jury lost its way in determining that the prosecution's witnesses were more credible than the defendant's witnesses.
In resolving the conflicts in the evidence, we cannot say the jury clearly lost its way or created a manifest miscarriage of justice. Defendant's second assignment of error is without merit.
 III. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO UNFAIRLY PREJUDICIAL PROSECUTORIAL MISCONDUCT.
In his third assignment of error, the defendant contends that a comment made by the prosecutor during closing arguments amounted to prosecutorial misconduct. We disagree.
The conduct of a prosecuting attorney during the course of trial cannot be made a ground for error unless that conduct deprived the defendant of a fair trial. State v. Papp (1978), 64 Ohio App.2d 203, 412 N.E.2d 401. In addition, another factor to be considered in determining whether the prosecutor's actions constituted misconduct is whether the remarks prejudicially affected substantial rights of the defendant. State v.Smith (1984), 14 Ohio St.3d 13, 470 N.E.2d 883 State v. Brooks (Aug. 15, 1985), Cuyahoga App. No. 48914, unreported, reopening disallowed (Nov. 9, 2000), Motion No. 19635, at 4.
In closing arguments, the prosecutor stated:
 This defendant stayed in his car because he was too drunk or too high on marijuana to get out. I submit to you we never heard any testimony to that effect. That was mentioned during his opening and it was just mentioned here at close and I never heard it. I never heard it because it wasn't testified to in this case, it's as simple as that.
(T. 693) Defendant contends that this comment amounted to prosecutorial misconduct. Defense counsel failed to object to the statement during closing arguments, therefore, the defendant has waived all but plain error pursuant to Crim.R. 52 (B). See State v. Underwood (1983),3 Ohio St.3d at 13. Plain error is to be invoked "only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Plain error is established when, but for the error, the outcome of the trial clearly would have been otherwise.Id.
Defense counsel asserts that the prosecutor's statement was a comment on appellant's failure to testify. Griffin v. California (1965),380 U.S. 609; 85 S.Ct. 1229. In determining whether a prosecutor's statement was an impermissible comment on defendant's failure to testify, the test is whether the language used was (1) manifestly intended to comment on the accused's failure to testify or (2) the jury would naturally and necessarily take it to be a comment on the failure to testify. See State v. Cooper (1977), 52 Ohio St.2d 163, 173,370 N.E.2d 725; State v. Webb (1994), 70 Ohio St.3d 325, 328-329,638 N.E.2d 1023.
A prosecutor is allowed to remark upon the fact that a defendant did not present evidence in support of his case. State v. Wright,
1996 Ohio App. LEXIS 2722 (June 27, 1996), Cuyahoga App. No. 69386 citing: State v.Watson (1991), 61 Ohio St.3d 1, 572 N.E.2d 97.
The Ohio Supreme Court resolved this issue in State v. Ferguson
(1983), 5 Ohio St.3d 160, 450 N.E.2d 265 where it held:
 1. A reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify, where the comment is directed to the strength of the state's evidence and not to the silence of the accused, and the jury is instructed not to consider the accused's failure to testify for any purpose.
In the case sub judice, the prosecutor's comments were intended to refer to the defendant's failure to offer testimony in support of his alibi that he was passed out in the car. In the defense's opening and closing arguments, defense counsel stated more than once that the defendant could not have participated in the robbery because he was so drunk and high that he was passed out in the car. The prosecutor's comment was not a comment on the defendant's failure to testify, rather it was a comment that the defense failed to present ANY witness to support the idea that the defendant was passed out in the car.
A jury can not naturally and necessarily take these comments as a reference to defendant's failure to testify. Therefore, the prosecutor did not err in commenting that the defense did not provide evidence in support of its case. This assignment of error is not well-taken.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., AND JAMES J. SWEENEY, J., CONCUR.