JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Donald Williams, appeals from his convictions after a jury trial for rape, felonious assault, aggravated robbery, and aggravated burglary. Williams also appeals from the trial court's subsequent finding of guilty on the sexually violent offender specification contained in his indictment.
 {¶ 2} Williams asserts his trial was tainted by the misconduct of the prosecutor, the admission of improper evidence, and the ineffective assistance of his trial counsel. Williams further asserts his convictions are supported by neither sufficient evidence nor the weight of the evidence. Finally, Williams claims error in the trial court's determination he is a sexually violent offender.
 {¶ 3} This court has reviewed the record with Williams' assertions in mind. Finding them to lack foundation, Williams' convictions and the specifications contained in his indictment are affirmed.
 {¶ 4} Williams' convictions stem from an incident that occurred on the evening of April 4, 2001. The eighty-three-year-old widowed victim was watching television in her home when she heard a knock on the side door. She responded to find a man of approximately twenty years of age standing outside at her storm door. Speaking to her through the glass, the young man stated he had noticed her yard remained littered with autumn leaves, and advised her his company could perform yard cleaning services for her.
 {¶ 5} The victim informed the visitor that she already had such a service. He would not be put off, however. Holding up what appeared to be a business card he pulled from a small valise for her to view, he "insisted"[1] his company could do the work immediately at a minimal charge. To be polite, she requested the card with the promise to think about his offer. The young man refused. He then pulled on the knob of the storm door with enough force to break its lock and pushed into her kitchen. The young man proceeded to seat himself at her kitchen table to discuss the services his company could perform. She, intimidated by his presence, simply stood nearby. In the course of his conversation, the man told her his name was Donald Williams and asked her if she remembered him. He reminded her that he lived nearby and several winters previously, he and a companion had shoveled her driveway.
 {¶ 6} Eventually Williams told the victim he wanted to use her telephone to discover if his colleagues were finished with their current job. When he returned to the kitchen from the living room, he indicated they soon would arrive with "the truck" to do the work. He seemed to be watching outdoors as he stood.
 {¶ 7} By this time, she needed to sit, so she walked into her living room toward her sofa. Williams followed. He told her the service would cost $30 and began to demand money from her.
 {¶ 8} Thoroughly frightened by Williams' behavior, the victim reached for her purse on the floor. Williams "grabbed" it from her, removed the paper money he found, then took her by the hair. Pushing her down so that her face was buried in the sofa cushion, he sat on her back and ordered her to tell him where she kept the rest of her money.
 {¶ 9} The victim struggled briefly but yielded when Williams threatened to kill her and began to strike her with a "ball peen hammer" she had kept in her kitchen. She told him she had money in the bedroom dresser, so he permitted her to rise in order to lead him there.
 {¶ 10} After "dumping" several drawers, searching through them, and taking any valuables he discovered, Williams ordered the victim to turn off the bedroom light. He then pulled at the front of her clothing until he had torn all of it off, pushed her backwards onto the bed, and unzipped his pants. Williams ordered her to "spread" her legs; although she refused, Williams pried them apart. He then proceeded to force his penis into her vaginal area.
 {¶ 11} Shortly thereafter, Williams told the victim to "get up, go to the bathroom, wash up." He followed her to ensure her compliance. Williams waited until she had seated herself into some tub water before leaving the bathroom. She heard him gathering things in her bedroom, then heard him leave her home. She emerged from her bathroom to discover Williams had taken not only her money, but the clothing he had torn from her body, the bed sheets and blanket, and her portable telephone.
 {¶ 12} Without a telephone, the victim waited to obtain aid until the following morning, when her neighbor arrived at his next door service station to open it for business. The neighbor summoned the victim's daughter and the police. The victim's daughter drove her to the hospital, where the victim was treated for rape and for the injuries inflicted upon her by the hammer.
 {¶ 13} The police soon located Williams; after being informed of his rights, Williams told them he had been selling drugs at his usual location on Forest Avenue in Cleveland at the time of the incident and could provide "100 witnesses" to attest to that.
 {¶ 14} Williams subsequently was indicted on four counts as follows:
 {¶ 15} rape, R.C. 2907.02, with a sexually violent predator specification; felonious assault, R.C. 2903.11 with both a sexual motivation and a sexually violent predator specification; aggravated robbery, R.C. 2911.01; and aggravated burglary, R.C. 2911.11. Williams requested the bifurcation of the sexually violent predator specifications from his jury trial on the charges. Ultimately, the jury found Williams guilty of each count but not guilty of the sexual motivation specification.
 {¶ 16} The trial court thereafter conducted a separate proceeding with regard to the sexually violent predator specifications. When it had concluded, the trial court determined Williams guilty. The trial court eventually sentenced Williams to terms of incarceration that totaled twenty-four years to life.[2] Williams now presents seven assignments of error for review.
 {¶ 17} Williams' first assignment of error states:
 {¶ 18} "The prosecutor violated the defendant's due process rights by inter alia, appealing to the passions and prejudices of the jurors, imploring the jurors to reach a verdict on behalf of the victim and the community, discrediting defense counsel, commenting on the defendant's lack of an alibi, and bolstering witnesses."
 {¶ 19} Williams argues that despite his trial counsel's failure to object to most of them, his right to due process of law was compromised by several instances of prosecutorial misconduct. Williams contends that cumulatively these instances require reversal of his convictions. This court disagrees.
 {¶ 20} The conduct of a prosecuting attorney during a trial generally cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. State v. Papp (1978), 64 Ohio App.2d 203, cited with approval in State v. Maurer (1984), 15 Ohio St.3d 239. Moreover, it has been held a trial court must afford the prosecutor some latitude and freedom of expression during argument. State v. Apanovich (1987),33 Ohio St.3d 19. Therefore, a defendant shall be entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice the defendant. State v. Tibbets, 92 Ohio St.3d 146,2001-Ohio-132; State v. Smith (1984), 14 Ohio St.3d 13.
 {¶ 21} Williams first takes issue with comments made by the prosecutor during rebuttal closing argument. Williams asserts the prosecutor's use of the terms "disgusting, revolting, sickening, inhuman, diabolical, heinous, [and] terrorizing," to describe the crimes served only to inflame the passions of the jury. A review of the record in its entirety, however, does not support a conclusion such descriptive terms in themselves tainted Williams' trial, since "criminal trials cannot be squeezed dry of all feelings." State v. Tibbets, supra at 168.
 {¶ 22} Much of what the prosecutor said simply was responsive to defense counsel's attempts to minimize the potential effect of the victim's testimony. State v. Lott (1990), 51 Ohio St.3d 160, 166. The opinions expressed by the prosecutor thus reasonably may be deemed to be based upon the evidence provided by the victim. State v. Tyler (1990),50 Ohio St.3d 24, 41. Additionally, such comments as were made in the instant case recently were deemed permissible in State v. Twyford,94 Ohio St.3d 340 at 356, 2002-Ohio-894.
 {¶ 23} Williams further challenges the prosecutor's call to the jury to render a verdict that would send a message to the "community." Although the prosecutor may not urge jurors to convict in order to preserve civil order, such comments are not improper if their intent is only to remind jurors of their "roles as members" of the civic body.State v. Matthews (Apr. 9, 1998), Cuyahoga App. No. 72123. In context, the challenged remarks fall within this ambit.
 {¶ 24} Williams additionally contends the prosecutor not only expressed an opinion regarding the victim's credibility, but also violated Williams' right against self-incrimination. This court, therefore, is required to determine whether the prosecutor's language was "manifestly intended" as either an endorsement of the witness' truthfulness or as a comment on Williams' failure to testify. State v.Green, 90 Ohio St.3d 352, 374; 2000-Ohio-182; State v. Webb70 Ohio St.3d 325 at 328, 1994-Ohio-425. The remarks to which Williams points do not meet this test. Rather, they were made in response to defense counsel's assertions concerning what the evidence demonstrated.State v. Twyford, supra.
 {¶ 25} Finally, Williams contends the prosecutor improperly denigrated defense counsel's statements and tactics. This court does not find the few questionable remarks to have exceeded the bounds of permissible argument. State v. Treesh 90 Ohio St.3d 460, 468,2001-Ohio-4.
 {¶ 26} A fair and impartial review of the record compels the conclusion that "neither alone nor in the aggregate" did the asserted errors deprive Williams of his right to due process of law. Id. At 357.
 {¶ 27} Accordingly, Williams' first assignment of error is overruled.
 {¶ 28} Williams' second assignment of error states:
 {¶ 29} "The trial court committed reversible error when it admitted the report of police officer Simpson to be read to the jury."
 {¶ 30} Williams contends Evid.R. 803(8) was violated when one of the investigating officers was permitted to read his entire police report on redirect examination. Since defense counsel invited this testimony when he questioned the officer regarding whether the victim actually claimed her assailant raped her, this assignment of error also is overruled. State v. Woodruff (1983), 10 Ohio App.3d 326; State v.Corruthers (Feb.12, 1998), Cuyahoga App. No. 72064.
 {¶ 31} Williams' third and fourth assignments of error state:
 {¶ 32} "The final verdict is against the manifest weight of the evidence where all of the scientific evidence from the scene conclusively excludes the defendant as the assailant; moreover, the victim herself proffered conflicting characterizations of the events in question."
 {¶ 33} "The final verdict is not supported by sufficient evidence."
 {¶ 34} Williams argues his convictions are supported by neither sufficient evidence nor the weight of the evidence; he contends the identity of the victim's assailant was not "conclusively" established. Williams' argument is meritless.
 {¶ 35} Pursuant to Crim.R. 29(A), a trial court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Bridgeman
(1978), 55 Ohio St.2d 261. The evidence must be viewed in a light most favorable to the state. State v. Dennis, 79 Ohio St.3d 421, 430,1997-Ohio-372.
 {¶ 36} With regard to an appellate court's function in reviewing the weight of the evidence, it must be determined from the "entire record" that in resolving conflicts in the evidence, the jury "clearly lost its way" and created a "manifest miscarriage of justice;" cases in which this occurs are "exceptional." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52. Thus, this court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily reserved for the jury. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 37} In this case, the victim's identification of Williams as her assailant was definite. Moreover, Williams identified himself to her as someone with whom she previously had become acquainted. She testified Williams forcibly entered her house, beat her repeatedly with a hammer until she yielded her money to him, proceeded to appropriate any other valuables he could find in her dresser drawers, and then reluctantly indicated he raped her, apparently merely because she had so little else for him to take. He then removed from her home as many physical indications of his activities as he could. Nevertheless, the victim's testimony was corroborated not only by the photographic evidence of her injuries, but by the other witnesses. Additionally, the telephone records of Williams' friend corroborate that witness' testimony that on the night of the attack, he placed a call to a number that appeared on his cellular telephone and spoke to Williams; the records indicate the witness called the victim's home at 8:03 p.m.
 {¶ 38} Under these circumstances, Williams' convictions for rape, felonious assault, aggravated robbery, and aggravated burglary were based on both sufficient evidence and the weight of the evidence. State v. Cox
(Jan. 30, 1992), Cuyahoga App. No. 59709; State v. Gedson (July 9, 1998), Cuyahoga App. No. 73034; State v. Pitts (Apr. 9, 1998), Cuyahoga App. No. 72304.
 {¶ 39} Williams' third and fourth assignments of error, accordingly, are overruled.
 {¶ 40} Williams' fifth assignment of error states:
 {¶ 41} "Trial counsel's failure to object to the prosecutor's ongoing misconduct during closing arguments, failure to timely file the notice of alibi, failure to cross exam (sic) witnesses, failure to present a single defense witness, failure to request a lessor (sic) included offense jury instruction, inter alia, operated in (sic) individually and in concert to deny Mr. Williams his constitutionally mandated effective assistance of effective (sic) counsel, a violation of the sixth and fourteenth amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."
 {¶ 42} Williams argues his trial counsel was ineffective on numerous grounds.
 {¶ 43} The claim of ineffective assistance of counsel requires proof that "counsel's performance has fallen below an objective standard of reasonable representation" and, in addition, that prejudice arises from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976),48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v.Bradley, supra, paragraph three of the syllabus.
 {¶ 44} The burden is on defendant to prove ineffectiveness of counsel. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id.; see, also,Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id.
 {¶ 45} The record with regard to counsel's actions in this case fails to demonstrate his performance fell below an objective standard of reasonableness. Although Williams initially contends counsel permitted improper remarks by the prosecutor to go unchallenged during closing argument, this court's resolution of Williams' first assignment of error deprives this contention of merit.
 {¶ 46} Williams next asserts trial counsel neglected to file a notice of alibi. Such action was unnecessary, however, since Williams himself told the investigating officers he was at another location during the time of the attack. The action also would have been foolhardy in the face of the evidence that his client telephoned a friend from the victim's home at the time of the attack. Counsel's subsequent decisions to decline either to cross-examine certain prosecution witnesses or to present any defense witnesses also were matters of trial tactics which cannot at this juncture be faulted. State v. Hunt (1984),20 Ohio App.3d 310; State v. Corrothers, supra.
 {¶ 47} Finally, trial counsel could hardly legitimately request a jury instruction on a lesser-included offense when his client completely denied any participation in the incident. Id.
 {¶ 48} The record clearly reveals defense counsel was a well-prepared, zealous advocate for Williams in the face of overwhelming evidence of guilt. Therefore, Williams cannot meet his burden to demonstrate trial counsel rendered ineffective assistance. State v.Bradley, supra.
 {¶ 49} Williams' fifth assignment of error, accordingly, also is overruled.
 {¶ 50} Williams' sixth assignment of error states:
 {¶ 51} "The evidence is insufficient, as a matter of law, to prove `beyond a reasonable doubt' that appellant `is likely to engage in the future in one or more sexually oriented offenses.'"
 {¶ 52} Employing an argument suited only to R.C. 2950.09(B) "sexual predator" determinations, Williams contends the trial court lacked an adequate basis for its R.C. 2971.02 finding of guilty on the "sexually violent predator" specification contained in the indictment.
 {¶ 53} R.C. 2971.01(H)(1) defines a "sexually violent predator" as a person who has been convicted of a "sexually violent offense" and who is "likely to engage" in such an offense in the future. The crime of rape qualifies under the first part of the definition. R.C. 2971.01(H)(2) then provides the factors which may be considered by the factfinder as evidence tending to indicate a future "likelihood."
 {¶ 54} Although none of the specific factors listed in R.C. 2971.02
(H)(2)(a)-(e), pertained to Williams, nevertheless the trial court heard testimony that supported its determination pursuant to subsection (2)(f). That subsection permits the consideration of "[a]ny other relevant evidence."
 {¶ 55} In this case, the state's expert witness opined that Williams' "history of impulsivity," coupled with both his "significant" record as a juvenile offender and the number of offenses for which he already had been convicted as an adult at the age of only twenty-two, indicated a great likelihood of criminal recidivism existed. Williams' criminal record also demonstrated an "MO" of victimizing older women, a pattern of escalating violence, and a tendency toward the "re-victimization" of the same person. The witness stated that it appeared Williams "seem[ed] to want to take from these victims and can't take enough . . . [He] wanted more from them." This indicated to the witness that as Williams became "increasingly agitated and could not get what he wanted[, he] then took the one other thing that [the victim] had there, which was her body." Williams' lack of empathy and remorse, his "sense of entitlement," and his "impulsivity" led the witness to believe Williams should be considered a "psychopathic" type of sexual offender.
 {¶ 56} This testimony was corroborated by other evidence presented at the proceeding, including the testimony of the defense expert. Williams' own witness found he posed a "high risk for violent reoffending." Moreover, the defense expert acknowledged Williams demonstrated "parasitic behavior" typical of a person with "psychopathic traits," and one of the factors "most highly correlated with sex offending recidivism" is "psychopathy."
 {¶ 57} Consequently, the trial court's finding of guilt on the specification is sufficiently supported in the record. State v. Bugg
(Apr. 7, 2000), Cuyahoga App. No. 74847; cf., State v. Rome (Dec. 27, 2001), Cuyahoga App. No. 78645.
 {¶ 58} Appellant's sixth assignment of error is overruled.
 {¶ 59} Appellant's seventh assignment of error states:
 {¶ 60} "The trial court erred in not incorporating into the record its findings of facts for the sexually violent predator hearing."
 {¶ 61} Williams argues the trial court improperly failed to set forth the specific factors upon which it based its finding of guilt on the sexually violent predator specification. A review of the record, however, demonstrates Williams made no such request of the trial court. Hence, he has waived this challenge for purposes of appeal. State v.Williams (1977), 51 Ohio St.2d 112; State v. Rome, supra.
 {¶ 62} Appellant's seventh assignment of error, therefore, also is overruled.
 {¶ 63} Appellant's convictions are affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and COLLEEN CONWAY COONEY, J. CONCUR.
[1] Quotes indicate testimony given by a witness at Williams' trial.
[2] The trial court at the same time sentenced Williams for a drug conviction in CR-407576 and ordered him to serve it consecutively to the terms imposed in this case.