JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Jujuan Norman ("defendant") appeals from the judgment of the trial court which, after a jury trial, found him guilty of murder. For the reasons set forth below, we affirm the judgment of the trial court but remand for re-sentencing consistent with this opinion.
 {¶ 2} On August 15, 2001, the defendant was indicted on one count of murder pursuant to R.C. 2903.02 with a firearm specification and one count of having a weapon while under disability in violation of R.C.2923.13. The defendant pleaded not guilty to the charges. The defendant waived his right to a jury trial on the charge of having a weapon while under a disability.
 {¶ 3} At trial, the evidence presented revealed that Warren Culbreath ("victim"), his sister, and two other boys were on the porch of his home on Kelton Avenue on the evening he was shot. Testimony revealed that as the children were sitting on the porch, they noticed a white car stop at the corner of Kelton and East 120th Street, where a man named Mr. Hill was stopped on his bicycle chatting with two friends who were walking a baby in a stroller. Testimony revealed that words were exchanged between the occupants of the white car and Mr. Hill. The occupants of the car had asked Mr. Hill, "are you Rockland?" There was further testimony that the occupants of the car stated to Mr. Hill, "You all killed my nigger." The question and comment alarmed Mr. Hill, who immediately dropped his bike and ran west down Kelton Avenue. Mr. Hill testified that he thought the men in the car were referring to the fact that his friend had killed a boy two weeks prior. He believed the occupants of the car were friends with the boy who was killed and wished to retaliate. The white car followed Mr. Hill down Kelton and passed the victim's house. As he ran toward 11811 Kelton, Mr. Hill was hollering "dude's coming!"
 {¶ 4} Two of the boys on the victim's porch walked a couple of doors down to try to see what was going on, until they realized that the white car had screeched while fish-tailing to turn back around. At that point, the boys ran up to their porch. While on the porch, they saw the white car run over Mr. Hill's bike before continuing past their house.
 {¶ 5} At the same time, defendants Langford, Jones, Norman and a friend, Mr. Smith, were on defendant Langford's grandfather's porch at 11811 Kelton. At the point when the white car abruptly turned around, the three defendants went into the house, while Mr. Hill ran up the driveway to the back of the lot and began to jump the fence. While maneuvering over the fence, Mr. Hill heard gunfire, at which point, he promptly proceeded over the fence.
 {¶ 6} When the kids on the porch heard the shooting, the victim's sister attempted to get all of the kids inside the house. All of the kids except one made it into the house. All three witnesses who testified to being on the porch that night stated that they did not see any occupant in the white car possess or fire a gun that evening. There was, however, conflicting testimony regarding whether the boys in the white car fired at the defendants.
 {¶ 7} The victim died after running in the house and attempting to flee to safety upstairs. A stray bullet came through the wall of the house, entered his back, traveled up his body, through his brain and rested in his skull. Police determined that the bullet that killed the victim came from the direction of 11811 Kelton Avenue.
 {¶ 8} In their statements to police, each defendant admitted to firing weapons in the direction of the white car that evening from the general direction of 11811 Kelton. However, none of the defendants admitted to firing a weapon capable of firing a 7.62 round of ammunition, which is what ultimately killed the victim. In these statements, all of the defendants admitted that they thought the people in the white car were "Bloods" who were out to avenge the death of their leader at the hands of a "Rockland." The defendants claimed that they shot at the white car in self-defense.
 {¶ 9} Thereafter, the defendant was found guilty of murder. He was sentenced to fifteen years to life for murder to be served consecutively to the maximum three-year term he was sentenced to for the gun specification. It is from this ruling that the defendant now appeals, asserting six assignments of error for our review. We address these assignments of error out of order. "II. The defendant was denied his constitutional right to a fair trial because of prosecutorial misconduct at trial which caused him substantial prejudice."
 {¶ 10} The defendant contends that several instances of prosecutorial misconduct rendered his trial unfair. We disagree.
 {¶ 11} We initially note that the defendant failed to properly object to any alleged improper statements by the prosecutor. Therefore, the defendant has waived all but plain error pursuant to Crim.R. 52(B). See State v. Underwood (1983), 3 Ohio St.3d 12, 13. Plain error is to be invoked "only to prevent a manifest miscarriage of justice." State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Plain error is established when, but for the error, the outcome of the trial clearly would have been otherwise. Id.
 {¶ 12} The conduct of a prosecuting attorney during the course of trial cannot be made a ground for error unless that conduct deprived the defendant of a fair trial. State v. Papp (1978), 64 Ohio App.2d 203. In addition, another factor to be considered in determining whether the prosecutor's actions constituted misconduct is whether the remarks prejudicially affected substantial rights of the defendant. State v.Smith (1984), 14 Ohio St.3d 13; State v. Brooks (Aug. 15, 1985), Cuyahoga App. No. 48914, reopening disallowed, (Nov. 9, 2000), Motion No. 19635, at 4.
 {¶ 13} Within this assignment of error, the defendant first asserts that the prosecutor acted improperly by repeatedly referencing gang activity and insinuating that the defendants were gang members during voir dire and at other times during the guilt phase of his trial. The defendant also complains that the prosecutor improperly questioned witnesses regarding gang activity in the Rockland neighborhood. He contends that the Rockland group refers to nothing more than people who live in that neighborhood, and that any reference to an alleged gang prejudiced his defense.
 {¶ 14} The scope of voir dire is generally within the trial court's discretion. State v. Bedford (1988), 39 Ohio St.3d 122, 129. Reasonable latitude must be given to counsel on the voir dire examination. Krupp v. Poor (1970), 24 Ohio St.2d 123, 125. Further, questions upon voir dire must be propounded in good faith, designed to determine whether prospective jurors can serve fairly and impartially in a particular case. Dowd-Feder v. Truesdell (1936), 130 Ohio St. 530, paragraph three of the syllabus.
 {¶ 15} The transcript in this case demonstrates that the trial court did not abuse its discretion in allowing the prosecutor to question potential jurors regarding their perceptions of gang related activity. The prosecutor had a good faith basis for the questions. The prosecution's theory of motive relied upon gang retaliation in which they propounded that the "Rockland boys" attempted to avenge the death of a fellow "gang member," which then prompted the defendants to fight back at the Rockland boys, firing the fatal shots in this case, when the defendants' stray bullets from their weapons accidentally struck the victim rather than the "Rockland boys." Therefore, alluding to gang activity was not improper. We therefore find that the prosecutor's questions during voir dire and the guilt phase of the trial with regard to gang activity do not rise to the level of plain error.
 {¶ 16} The defendant also contends within this assignment of error that the prosecutor improperly attempted to arouse the jurors' emotions in his opening argument. The Supreme Court of Ohio has stated the following with regard to the propriety of a prosecutor eliciting emotion from the jury:
 {¶ 17} "Realism compels us to recognize that criminal trials cannot be squeezed dry of all feeling. But it does not follow that prosecutors may deliberately saturate trials with emotion. We have previously announced that `a conviction based solely on the inflammation of fears and passions, rather than proof of guilt requires reversal.' State v. Williams
(1986), 23 Ohio St.3d 16. Excessively emotional arguments may deny due process." State v. Keenan
(1993), 66 Ohio St.3d 402, 409.
 {¶ 18} In this case, the prosecutor was describing for the jury what the evidence would demonstrate at trial. In the course of that description, the prosecutor stated:
 {¶ 19} "Before he does that, picture in your mind walking to your front room or your front hallway to find out if any of the children are shot and discovering one of them is. What he does is gets on the phone, calls the police, calls 911 and the police are called. * * *" (T. 497)
 {¶ 20} The defendant has failed to demonstrate how this statement prejudiced his defense. The prosecutor was simply asking the jury to picture what John Knight, Sr. experienced on the night of the murder. The prosecutor was describing the events as experienced by Mr. Knight. We cannot say that this comment indicates that the prosecutor saturated the defendant's trial with emotion, nor can we say that his conviction was based solely on the inflammation of passions. The prosecutor's comment in his opening argument did not rise to the level of plain error.
 {¶ 21} The defendant lastly complains within this assignment of error, that during closing argument, the prosecutor made an incorrect and misleading statement to the jury.
 {¶ 22} A prosecutor is afforded wide latitude in closing arguments. State v. Jacks (1989), 63 Ohio App.3d 200. The conduct of a prosecuting attorney during the course of trial cannot be made a ground for error unless that conduct deprived the defendant of a fair trial.State v. Papp (1978), 64 Ohio App.2d 203. In addition, another factor to be considered in determining whether the prosecutor's actions constituted misconduct is whether the remarks prejudicially affected substantial rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13. When determining whether misconduct occurred in closing argument, we consider (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant. State v. Braxton
(1995), 102 Ohio App.3d 28.
 {¶ 23} In this case, the prosecutor stated:
 {¶ 24} "* * * Legally, it doesn't make a hoot of difference whether the shot that killed Warren came out of that car or that shot that killed him came from these guys over here. They are engaged in a course of criminal conduct that got Warren killed." (T. 1529).
 {¶ 25} As noted earlier, the defendant did not object to this statement. Further, even if improper, the trial court cured the alleged misstatement. The trial court properly instructed the jury on the elements of aiding and abetting, the doctrine of transferred intent and self-defense. We therefore cannot find that this statement made by the prosecutor during closing arguments amounted to prosecutorial misconduct.
 {¶ 26} "III. The trial court erred in denying the defendant's rule 29 motion when the state failed to offer evidence sufficient to sustain a conviction on the murder charge."
 {¶ 27} In his third assignment of error, the defendant specifically argues that there was insufficient evidence to demonstrate that the defendant fired the fatal shot. Alternatively, the defendant argues that there was insufficient evidence to show that one of his co-defendants fired the fatal shot and that he acted in complicity therewith. We disagree.
 {¶ 28} Crim.R. 29 provides:
 {¶ 29} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 30} A Crim.R. 29 motion for judgment of acquittal is properly denied where the evidence is such that reasonable minds could reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, at the syllabus.
 {¶ 31} The defendant argues that the evidence presented at trial was that the defendant had fired either a .22 rifle or a .38, neither of which were capable of expelling a 7.62 pellet which killed the victim. The defendant admits that he fired at the white car as it passed him on Kelton, but that he had never shot in the direction of the victim's house. It follows, he argues, that the prosecution therefore necessarily failed to prove that he fired the fatal shot and thus failed to establish that he was guilty of murder. We disagree.
 {¶ 32} R.C. 2903.02(B) states, in relevant part: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." Further, the doctrine of transferred intent indicates that where a defendant attempts to harm one person and, as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the defendant is held criminally liable as if he intended to harm and did harm the same person. State v. Mullins (1992), 76 Ohio App.3d 633.
 {¶ 33} Further, a defendant who aided and abetted a murder could be charged as if he were a principal to the murder under the complicity statute. State v. Taylor (1993), 66 Ohio St.3d 295. Criminal intent can be inferred from an accused's presence, companionship, and conduct both before and after the offense. State v. Kajoshaj (Aug. 10, 200), Cuyahoga App. No. 76857, citing State v. Cartellone (1981), 3 Ohio App.3d 145. Therefore, in order to convict the defendant of murder, it was only necessary for the state to prove that the defendant aided and abetted the murder, not that the defendant had fired the fatal shot.
 {¶ 34} In this case, the defendant admitting to shooting at the white car on Kelton as it passed him. His co-defendants also admitted to shooting at the white car as it passed. While none of the defendants intended to harm the victim, their intent to harm those in the white car is transferred.
 {¶ 35} Having admitted to shooting at the white car, we find that the defendant's presence, companionship and participation in the crime provided sufficient evidence to withstand a Crim.R. 29 motion by the defendant. Therefore, this assignment of error is without merit.
 {¶ 36} "IV. The jury's decision was not supported by sufficient probative evidence."
 {¶ 37} In order to determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court views the evidence in a light most favorable to the prosecution. State v.Dennis (1997), 79 Ohio St.3d 421, 430; State v. Randazzo, 2002-Ohio-2250, Cuyahoga App. No. 79667. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386.
 {¶ 38} In viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the defendant was guilty of murder beyond a reasonable doubt. The defendant admitted to shooting at the white car and while he claimed that this act was in self-defense, the evidence did not demonstrate that the defendant stayed in the house for safety, rather, that he quickly returned outside to cross-fire. The defendant also admitted to shooting his gun from the location in which the fatal shot had been fired.
 {¶ 39} We therefore find, in viewing the facts in a light most favorable to the prosecution, that there existed sufficient evidence to support a conviction of murder. This assignment of error is therefore overruled.
 {¶ 40} "V. The jury's verdict finding was against the manifest weight of the evidence."
 {¶ 41} In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, citingTibbs v. Florida (1982), 457 U.S. 31. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison
(1985), 23 Ohio App.3d 10. The credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. Statev. Antill (1964), 176 Ohio St. 61; State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 42} In this case, the jury was faced with the task of evaluating the credibility of the prosecution's witnesses and resolving the conflicts in the evidence. While the defendant had admitted in his statement to police that he shot at the white car, he had claimed that this act was in self-defense. The jury was in the best position to weigh this evidence against the testimony of witnesses at trial.
 {¶ 43} With regard to the murder charge, the state presented credible testimony that the victim suffered fatal injuries from a stray bullet that had come from the direction of the house where the defendant admitted that he had been firing a gun. Further, there was evidence to indicate that, instead of fleeing to the interior of the home for safety, the defendant went inside the house to retrieve a gun and then went back outside to shoot at the car. While the defendant's gun may not have produced the fatal shot to the victim, there was evidence to prove that the defendant acted in complicity with his co-defendants, each of whom may have delivered the fatal shot.
 {¶ 44} After weighing the conflicting testimony in this regard, the jury determined that the defendant was, in fact present and did participate in the gunfire, which ultimately killed the victim. Again, the jury was charged with the task of evaluating the evidence and weighing it against the credibility of a witness. Antill, supra, 176 Ohio St. 61.
 {¶ 45} We cannot say that the jury lost its way nor created a manifest miscarriage of justice in determining that the defendant was guilty of murder. Therefore, this assignment of error is without merit.
 {¶ 46} "VI. The defendant was denied the effective assistance of counsel when his attorney failed to move for a separate trial from the other defendants, failed to make an opening statement or to cross-examine most witnesses, and failed to object to the numerous instances of prosecutorial misconduct."
 {¶ 47} In establishing a claim of ineffective assistance of trial counsel, it is clear that a defendant must make a two-part showing:
 {¶ 48} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless the defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington (1986), 466 U.S. 668, 687. Accord State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
 {¶ 49} The Strickland Court also cautioned courts examining the issue that:
 {¶ 50} "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac (1982), 456 U.S. 107, 133, 134. * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 689. See, also, State v. Frazier (1991), 61 Ohio St.3d 247, 253, 574 N.E.2d 483. In addition, absent demonstration of prejudice, this court must indulge in a strong presumption that the failure to object at trial constitutes sound strategy: Strickland supra; State v. Moore (1994), 97 Ohio App.3d 137. See, also, State v. Catlin
(1990), 56 Ohio App.3d 75. Within this assignment of error, the defendant first contends that his trial counsel was ineffective for failing to move to sever his trial from that of other defendants. We reject the defendant's contention. We find that it is reasonable trial strategy of defense counsel to try co-defendants together. Accord State v. Van Horn (Mar. 25, 1993), Cuyahoga App. No. 61981. Trial counsel may have reasonably believed that trying the defendants together would work to his client's advantage. Accord State v. Bewsey (June 16, 1993), Summit App. No. 15857. In this case, defendant's trial counsel may have believed that the evidence was such that the jury would believe his co-defendants were entirely responsible for the murder of the victim, and that the jury would, as a result, convict only his co-defendants. We therefore, cannot find that this tactical decision not to seek separate trials constituted ineffective assistance of counsel.
 {¶ 51} The defendant also maintains within this assignment of error that he received ineffective assistance of counsel as a result of his counsel's decision to waive opening argument. The decision not to make an opening statement is viewed as a tactical decision to which a reviewing court must be highly deferential. Strickland, supra. State v.Bradley (1989), 42 Ohio St.3d at 144, Accord State v. Bays (Jan. 30, 1998), Greene App. No. 95-CA-118. Moreover, the defendant fails to demonstrate how this decision prejudiced his defense.
 {¶ 52} Lastly, within this assignment of error, the defendant maintains that trial counsel was ineffective for objecting to the various alleged instances of prosecutorial misconduct. With regard to an alleged failure to object to prosecutorial misconduct, the Ohio Supreme Court has stated that a defendant may not recast objections to prosecutorial misconduct into claims of ineffective assistance without showing deficient performance or how reasonably probable that, but for his attorney's errors, the result of the trial would be different. State v.Hanna (2002), 95 Ohio St.3d 285. The Hanna court also noted that "the failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel," quoting State v. Fears (1999),86 Ohio St.3d 329; State v. Holloway (1988), 38 Ohio St.3d 239, 244.; see, also, State v. Hartman (2001), 93 Ohio St.3d 274, 300. In this case, the defendant has not demonstrated that any particular failure to object substantially violated any essential duty or was otherwise prejudicial. We therefore reject this claim and overrule this assignment of error.
 {¶ 53} "I. The trial court erred in imposing the maximum sentence for the weapon under disability conviction and in ordering this sentence to be served consecutively when none of the requisite findings were made."
 {¶ 54} The defendant argues, and the prosecution concedes, that the trial court failed to make the requisite findings on the record prior to ordering the defendant to serve the maximum allowable time for the charge of having a weapon under disability. The defendant also avers, and the prosecution concedes, that the trial court failed to make the requisite findings on the record prior to ordering the defendant to serve his fifteen year term for murder consecutively to the firearm specification term. We agree with these contentions.
 {¶ 55} A trial court is required to make a finding that a defendant fits within one of the categories listed in R.C. 2929.14 (C) when imposing a maximum sentence for an offense. Pursuant to R.C.2929.19(B)(2)(d), the trial court must state its reasons on the record that support such a finding. State v. Parker (2001), 144 Ohio App.3d 334
citing State v. Edmonson (1999), 86 Ohio St.3d 324.
 {¶ 56} Further, Pursuant to R.C. 2929.19(B)(2)(c), if the trial court imposes consecutive sentences, it must make a finding on the record giving the reasons for imposing consecutive sentences. State v. Corrigan
(May 25, 2000), Cuyahoga App. No. 76124, citing State v. Stroud (Oct. 28, 1999), Cuyahoga App. No. 74756.
 {¶ 57} Pursuant to R.C. 2929.14(E), the trial court may impose consecutive prison terms for convictions of multiple offenses upon the making of the following enumerated in the statute:
 {¶ 58} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 59} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code or was under post-release control for a prior offense.
 {¶ 60} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 61} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 62} "(5) When consecutive prison terms are imposed pursuant to division (E)(1), (2), (3), or (4) of this section, the term to be served is the aggregate of all of the terms so imposed."
 {¶ 63} It must be clear from the record that the trial court made the required findings. State v. Garrett (Sept. 2, 1999), Cuyahoga App. No. 74759, citing State v. Veras (July 8, 1999), Cuyahoga App. Nos. 74416, 74466.
 {¶ 64} We therefore remand for re-sentencing consistent with this opinion.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., AND TERRENCE O'DONNELL, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R.22(B), 22(D) and 26(A); Loc.App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).